**SO ORDERED.**

**SIGNED this 15 day of December, 2008.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re: )<br>)<br>GILBERT MICHAEL TABARES, JR. )<br>and JENNIFER LYNN TABARES, )<br>)<br>                Debtors. )<br>_____) | Case No. 08-40324<br>Chapter 13 |

**MEMORANDUM OPINION AND ORDER
SUSTAINING TRUSTEE'S OBJECTION TO
ATTORNEY FEES SOUGHT IN
CLAIM BY U.S. BANK, NA.**

This matter is before the Court on the Trustee's Objection to Claim No. 5, filed by U.S. Bank, NA ("U.S. Bank").[1] Although the Trustee originally objected to several portions of U.S. Bank's claim, the only remaining issue is whether U.S. Bank is entitled to $350 for post-petition attorney fees as part of its claim.

_____

[1] Doc. 24.

The parties have stipulated to the facts,[2] which stipulation the Court adopts. The Court has jurisdiction to decide this matter,[3] and it is a core proceeding.[4]

## I. FINDINGS OF FACT

On or about March 28, 2005, Debtors Gilbert Michael Tabares, Jr. and Jennifer Lynn Tabares, executed a promissory note in favor of National Bank of Kansas City. The Note is secured by a mortgage on Debtors' homestead. National Bank of Kansas City transferred its interests in the Note to U.S. Bank. Three years later, Debtors filed their Chapter 13 petition. U.S. Bank filed a proof of claim seeking, among other charges, $350.00 in post-petition attorney fees and costs.

## II. CONCLUSIONS OF LAW

The "American Rule" requires each litigant to bear the cost of his or her own legal fees and expenses. The exception to this rule is when a statute so dictates, or the parties otherwise agree. Section 506(b)[5] of the Bankruptcy Code provides statutory authority for shifting the responsibility for payment of attorney fees under certain conditions. That section states:

---

[2] Doc. 33.

[3] 28 U.S.C. § 1334.

[4] 28 U.S.C. § 157(b)(2)(B).

[5] This case was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101 - 1532 (2005), unless otherwise specifically noted.

2

> To the extent an allowed secured claim is secured by property the value of which … is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

For U.S. Bank to be entitled to receive attorney fees from Debtors, therefore, it must show that (1) it is oversecured, (2) the requested fees are reasonable, and (3) the agreement under which the claim arose (the note and mortgage) allows for the collection of those fees.[6]

Although the Trustee doubts whether U.S. Bank is oversecured, he has elected not to contest that issue. Instead, the Trustee only raises two issues. First, he questions whether the $350 attorney fees sought are reasonable, noting that U.S. Bank has not provided an itemization of how these fees were calculated. Second, the Trustee contends that the underlying agreement between Debtors and U.S. Bank does not expressly provide for Debtors to pay attorney fees under these facts. Because the Court finds this second issue dispositive, the Court will not address the issue of reasonableness.

In determining whether an agreement allows for the collection of fees, courts generally look to state law.[7] The rules of contract interpretation in Kansas are well established. The "cardinal rule" of contract interpretation is that a court must "ascertain the parties' intention and give effect to that intention when legal principles so allow."[8] "Reasonable rather than unreasonable interpretations of contracts are favored, and

---

[6]*In re Williams*, 183 B.R. 895, 897 (D. Kan. 1995).

[7]*Id.*

[8]*Williamson v. Kay (In re Villa West Assocs.)*, 146 F.3d 798, 803 (10th Cir. 1998) (citing *Ryco Packaging Corp. v. Chapelle Int'l, Ltd.*, 23 Kan. App. 2d 30 (1996)).

3

accordingly, interpretations which lead to absurdity or negate the purpose of the contract should be avoided."[9] All terms of a contract should be read together in harmony.[10]

"A contract that is plain and unambiguous on its face is enforced according to its terms which are given their plain, general and common meaning."[11] "A contract is ambiguous if it has provisions of doubtful or conflicting meaning. Ambiguity exists when the application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more meanings is the proper meaning."[12] "Courts are not to rewrite or insert terms under the guise of contract interpretation in order to achieve an equitable result or to import an intent never expressed."[13]

U.S. Bank points to paragraph 7 of its mortgage as the contractual provision that entitles it to attorney fees. The pertinent language upon which U.S. Bank relies in Paragraph 7 follows:

> If [Debtors] fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect [U.S. Bank's] rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then [U.S. Bank] may do and pay whatever is necessary to protect the value of the Property and

---

[9]*Time Warner Entm't Co., LP v. Everest Midwest Licensee, L.L.C.*, 381 F.3d 1039, 1044-45 (10th Cir. 2004) (internal quotation marks omitted).

[10]*Id.* at 1045.

[11]*In re Williams*, 183 B.R. at 897-98 (citing *Wagnon v. Slawson Exploration Co.*, 255 Kan. 500, 511 (1994)).

[12]*Id.* (citing *Simon v. Nat'l Farmers Org., Inc.*, 250 Kan. 676, Syl. ¶ 2 (1992)).

[13]*Id.* (citing *Galindo v. City of Coffeyville*, 256 Kan. 455, 466 (1994)).

4

> Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

U.S. Bank claims that this language, allowing U.S. Bank to "do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property," should be read broadly enough to include payment of attorney fees associated with work done in this bankruptcy proceeding.

U.S. Bank relies on *In re Williams*[14] to support its broad reading of the cited language. In *Williams*, the court was required to interpret a security agreement that provided, in part:

> All Debtors agree to pay reasonable costs of collection upon default, **including reasonable attorneys fees** incurred in the collection of this Note and realizing on a security interest.[15]

The issue in that case was whether the attorney fees, which were expressly allowed by the agreement, were also allowed in a bankruptcy proceeding. The court thus had to determine whether attorney fees incurred in responding to a bankruptcy proceeding fit within the contract provision that allowed for fees "incurred in the collection of this Note and realizing on a security interest."

The court held that the contract was unambiguous given the normal course of business in which the agreement was made, and that to read the contract provision so narrowly that it excluded bankruptcy proceedings was an unreasonable interpretation of the contract.[16]

---

[14]*Id*.

[15]*Id.* at 898 (emphasis added).

[16]*Id.* at 898-99.

Therefore, the creditor was entitled to recover attorney fees in that case.

This Court finds the *Williams* holding both unremarkable and not particularly relevant to this case. In *Williams*, there was no question that attorney fees were allowable under certain circumstances; the only question was whether attorney fees for work done in the bankruptcy proceeding were allowed under the stated contractual provisions (for the collection of the note or the realization of the security interest). The Court agrees that it would have been unreasonable to exclude attorney fees under the contract language in *Williams*, but that holding has little impact on whether the contractual provisions in this case allow attorney fees.

The Trustee relies on *In re Woodham*[17] to support his claim that the pertinent language should not be read to allow for the collection of attorney fees. In *Woodham*, the Florida bankruptcy court interpreted a mortgage provision that was, with the exception of a few changes that are not relevant here, essentially identical to the mortgage provision at issue in this case. That court held that the contract provision was ambiguous on the issue of attorney fees, and that because the creditor was the drafter of the contract, any ambiguities in the contract should be read against the creditor and in favor of the debtors.[18] The court also noted that the mortgage was likely a contract of adhesion, with the debtors having no meaningful opportunity to negotiate the terms of the agreement, and with the mortgage being

---

[17]174 B.R. 346 (Bankr. M.D. Fla. 1994).

[18]*Id.* at 348-49.

6

"imposed on the mortgagor on a take it or leave it basis by the mortgagee."[19] Although *Woodham* was decided under Florida law, the Court notes that the standards for contract interpretation applied in that case are not significantly different from those required under Kansas law.

The Court finds the decision in *Woodman* persuasive, and holds that the contract provisions contained within the mortgage between Debtors and U.S. Bank do not allow for the payment of attorney fees in this case. The language appears, at first blush, to be broadly enough drafted to encompass attorney fees, when it states that U.S. Bank "may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property." However, that very same sentence then proceeds to enumerate items that are of the type to be included in the "do and pay whatever" ability of U.S. Bank.

Those items specifically noted are "payment of taxes, hazard insurance and other items mentioned in paragraph 2." The "items mentioned in paragraph 2" include taxes and special assessments, leasehold payments or ground rents on the property, casualty insurance premiums, and mortgage insurance.

There is no express mention of attorney fees in either paragraph 7 or paragraph 2 (referenced in paragraph 7). In addition, the specific items listed in those two paragraphs are not of the same type of obligation as the attorney fees here sought by U.S. Bank. Even recognizing that the list of items that are properly chargeable against Debtors, which are

---

[19]*Id.* at 349.

Case 08-40324    Doc# 38    Filed 12/15/08    Page 7 of 10

contained in those two paragraphs, is not intended to be exclusive, the fact that the specific items listed are in no way similar to the attorney fees requested in this case strongly suggests that attorney fees were not meant to be included in the parties' agreement.[20]  At most, the Court could possibly find that paragraph 7 is ambiguous as to whether attorney fees are allowable, but as the drafter of the mortgage, any ambiguity would necessarily be resolved against U.S. Bank.[21]

The Court also finds that language contained in the note, executed simultaneously with, and part and parcel of, the mortgage, is significant in interpreting what the parties intended when signing the mortgage.  Although these are two separate legal documents, they were signed as part of the same transaction.  Accordingly, agreements made in the note are relevant in determining the parties' intent as to the entire transaction, including the meaning of any ambiguous terms contained in the mortgage.  Unlike the mortgage, paragraph 6(C) of the note specifically allows for "reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law."  However, paragraph 6 also clearly

---

[20]*Jones v. KP&H LLC*, 288 Fed. Appx. 464, 470, 2008 WL 2805444, 6 (10th Cir. 2008), (holding that "under the rule of ejusdem generis, we must interpret general provisions in light of more specific provisions in a contract"), citing *Smith v. Russ*, 184 Kan. 773 (1959) and *Exch. State Bank v. Kan. Bankers Sur. Co.*, 39 Kan.App.2d 232 (2008).  *See also Trego WaKeeney State Bank v. Maier*, 214 Kan. 169, 174-175 (1974) (holding that "[t]he rule of ejusdem generis is a well known maxim of construction to aid in ascertaining the meaning of a statute or other written instrument which is ambiguous. Under the maxim, where enumeration of specific things is followed by a more general word or phrase, such general word or phrase is held to refer to things of the same kind, or things that fall within the classification of the specific terms).

[21]*Liggatt v. Employers Mut. Cas. Co.*, 273 Kan. 915, 921 (2002) (holding "If the meaning is ambiguous, the contract must be construed against the drafter.").

8

provides that those attorney fees apply **only** "[i]f [U.S. Bank] has required immediate payment in full" following a default by Debtors.

There is no evidence before the Court that U.S. Bank had, before the bankruptcy was filed, accelerated the payment of the note requiring immediate payment in full. Accordingly, the fact that the note specifically allows for the collection of attorney fees, under circumstances not applicable to this case, while the mortgage is notably silent on the issue of attorney fees, while specifically identifying other fees and costs that can be charged to Debtors, further supports a finding that the language contained in the mortgage was not intended to include the attorney fees sought.

## III. CONCLUSION

The Court finds that the mortgage between Debtors and U.S. Bank does not unambiguously provide for the payment of attorney fees incurred by U.S. Bank in responding to this bankruptcy proceeding. Although the mortgage does state that U.S. Bank can "do and pay whatever" is necessary to protect its interest in the property, when that phrase is read together with other provisions of the contract, and with other documents executed during the transaction, it is clear to the Court that the most reasonable interpretation of paragraph 7 is that attorney fees are not included in the items to which U.S. Bank is entitled on a debt that has not yet been accelerated. The rule of statutory construction providing for ambiguities in a contract to be construed against the drafter, here U.S. Bank, supports this holding.

Because the Court has found that the mortgage between Debtors and U.S. Bank does not allow for the payment of attorney fees under these facts, U.S. Bank cannot include those

9

fees in its proof of claim pursuant to § 506(b). Therefore, the Trustee's objection will be sustained to the extent it objects to the inclusion of $350 for attorney fees in U.S. Bank's claim.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Trustee's Objection to Claim No. 5, filed by U.S. Bank, NA,[22] is sustained to the extent the Trustee has objected to the inclusion of $350.00 in post-petition attorney fees in that claim.

**IT IS FURTHER ORDERED** that the remainder of the Trustee's Objection to Claim No. 5, filed by U.S. Bank, NA, is denied as moot based upon the stipulation by the Trustee and U.S. Bank that all other issues have been resolved.

### 

---

[22] Doc. 24.